UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CAMERON KILLS SMALL,<br><br>                    Plaintiff,<br><br>     vs.<br><br>ANDREW SAUL,<br><br>Commissioner, Social Security Administration,<br><br>                    Defendant. | 5:19-CV-05049-DW<br><br>ORDER |

### INTRODUCTION

On July 12, 2019, claimant Cameron Kills Small filed a complaint appealing the final decision of the Commissioner of the Social Security Administration, finding him not disabled. (Doc. 1). The Commissioner denies claimant is entitled to benefits. (Doc. 9). The Commissioner opposes the complaint in its entirety. (Doc. 23). For the reasons stated below, claimant's complaint seeking relief in the form of a judgment reversing the decision of the Commissioner (Doc. 1) is granted.

### FACTS AND PROCEDURAL HISTORY

This action arises from plaintiff Cameron Kills Small's application for Social Security disability insurance benefits and supplemental security income filed on October 16, 2015, alleging an onset of disability date of August 19, 2015. (Docket 1). Mr. Kills Small's claim was denied initially and upon

1

reconsideration.  Administrative Record at p. 11 (hereinafter "AR ____").  Mr. Kills Small then requested an administrative hearing, which was held on June 19, 2018.  (AR 11).  On September 20, 2018, the administrative law judge ("ALJ" issued a decision finding Mr. Kills Small was not disabled.  (AR 23).  On June 17, 2019, the Appeals Council denied Mr. Kills Small's request for review and affirmed the ALJ's decision.  (AR 1-7).  The ALJ's decision constitutes the final decision of the Commission of the Social Security Administration.  It is from this decision which Mr. Kills Small timely appeals.

The issue before the court is whether the ALJ's decision of September 20, 2018, that Mr. Kills Small was not "under a disability, as defined in the Social Security Act, since August 19, 2015, is supported by the substantial evidence in the record as a whole.  Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Choate v. Barnhart, 457 f.3D 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580.  The court reviews the Commissioner's decision to determine if an error of law was committed.  Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Cox v.

Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision… [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 901 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits under Title XVI. 20 CFR § 416.920(a). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation

does not proceed to the next step as the claimant is not disabled. Id. The five-step sequential evaluation process is:

> (1) Whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment – one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform … past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998). See also Boyd v. Sullivan, 960 F.2d 733, 735 (8th Cir. 1992) (the criteria under 20 CFR § 416.920 are the same under 20 CFR § 404.1520 for disability insurance benefits). The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations. (AR at pp. 11-23).

## DISCUSSION

### STEP ONE

At step one, the ALJ determined claimant "had not [been] engaged in substantial gainful activity since August 19, 2015, the alleged onset date" of disability. (AR at p. 14).

### STEP TWO

At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 CFR § 404.1520(c). A medically determinable impairment can only be established by an acceptable medical source. 20 CFR § 404.1513(a). Accepted medical sources include, among others, licensed physicians. Id. "It

4

is the claimant's burden to establish that [his] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).

In the current application for disability, Mr. Kills Small asserted disability for a right leg injury and stomach problems. (AR 300). In a previous 2008 application for disability benefits, Mr. Small sought benefits for these issues, as well as for "learning disabilities." (AR 418). That application denied. Although not formally set forth in his 2015 application, Mr. Kills Small clearly raised the issue before the ALJ at the August 23, 2016, hearing (AR 49) and the ALJ admitted Mr. Kills Small's scholastic records (AR 370-403), his prior application for disability, as well as the prior report from psychologist Greg Swenson. (AR 11-12, 815)

The ALJ found that Mr. Kills Small suffered from the following severe impairments: lower leg residuals from a broken bone and diverticulitis. (AR 14). The ALJ found that Mr. Kills Small's heart problems are non-severe. Id. Lastly, the ALJ found, the "claimant's medically determinable cognitive impairment does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is non-severe." Id.

The regulations describe "severe impairment" in the negative. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 CFR § 404.1521(a). An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby, 500 F.3d at 707.

Thus, a severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities. Additionally, impairment must have lasted at least twelve months or be expected to result in death. See 20 CFR § 404.1509.

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. Id. §§ 404.1521(b)(1–6), 416.921(b)(1–6); see Bowen v. Yuckert, 482 U.S. 137, 141, (1987).

"Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard...." Id. at 708 (internal citation omitted). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." Page v. Astrue, 484 F.3d 1040 1043 (8th Cir. 2007).

Plaintiff frames the issues as follows:

1. Did the ALJ commit legal error by rejecting Kills Small's intellectual disability?

2. Was the vocational expert's testimony supported by substantial evidence?

> 3. Did the vocational expert's testimony fail to establish that there were substantial number of jobs existing in Kills Small's region or in several regions of the country?

(Doc. 14 at p. 1).

The Commissioner first argues that substantial evidence supports the finding that Mr. Kills Small did not have a severe mental impairment. Alternatively, the Commissioner contends any error on the part of the ALJ is harmless because at least one severe impairment was identified. (Doc. 23 at p. 11). Because the ALJ did not deny benefits at step two and proceeded to step three, the Commissioner asks the court to adopt decisions from other Circuit Courts and finds any error is "not reversible error." Id. at p. 12 (referencing Carpenter v. Astrue, 537 F.3d 1264, 1265-66 (10th Cir. 2008) ("any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("any [step two] error was harmless . . . . [because] the ALJ extensively discussed Lewis's bursitis at Step 4 of the analysis . . . ."); Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.).

The court does not accept the Commissioner's argument that any error at step two is irrelevant because the ALJ proceeded to the next step. An ALJ's failure to recognize a severe impairment at step two may affect the remainder of the ALJ's analysis because the Social Security regulations require the ALJ to consider any severe impairments found at step two throughout the remainder of the five-step evaluation process. See 20 CFR § 404.1520(a)(4).

Therefore, the court must resolve whether the court erred at step two in determining that Mr. Kills Small's mental impairment was non-severe.

### A. Plaintiff's Age and Education

Mr. Kills Small was 48 years old when the ALJ rendered his decision. (AR 23). The appeal records contains Mr. Kills Small's scholastic records from the Loneman School Corporation. The school records demonstrate that Mr. Kills Small consistently received poor grades by his teachers, as well as performed in the bottom percentiles on national standardized tests. In the second grade, Mr. Kills Small ranked tenth on the national percentile for a composite score in standardized testing; in the third grade he ranked at the sixth percentile; in fourth grade he ranked at the seventh percentile; and in sixth grand he ranked on the fifth percentile. (AR 375, 390, 391, 393). Mr. Kills Small was retained and repeated the first grade and was retained twice in the seventh grade before dropping out of school. (AR 398, 402). Mr. Kills Small did not obtain his GED. (AR 52).

While the Commissioner accurately pointed out that the Loneman school records contain references to repeated absences (Doc. 23 at p. 11), this does

not rule out the conclusion that Mr. Kills Small was mentally impaired. Numerous entries from Mr. Kills Small's teachers note a satisfactory effort even despite receiving a failing grade. One teacher noted, "slow leaner" (AR 291) and another wrote "I think probably learning disabled." (AR 403). The totality of Mr. Kills Small's scholastic records is consistent not only with his self reported difficulties, but also with the testing and diagnosis conducted by Dr. Swenson as discussed *infra*. The ALJ did not discuss or cite any of Mr. Kills Small's scholastic records.

The Commissioner minimizes the 1980s school records and Dr. Swenson's 2008 test results because neither are evidence that Mr. Kills Small suffered from a severe mental impairment during the relevant period from his alleged onset date through the date of the ALJ's September 20, 2018 decision. (Doc. 23 at 7-7). The court agrees with Mr. Kills Small that this evidence is relevant to a determination as to whether his mental impairment is severe. " . . a person's IQ is presumed to remain stable over time in the absence of any evidence of change in a claimant's intellectual functioning." Maresh v. Barnhart, 438 F.3d 897, 900) (8th Cir. 2006). "Mental retardation is not normally a condition that improves as an affected person ages." Christner v. Astrue, 498 F.3d 790, 793 (8th Cir. 2007). Therefore, evidence that the defendant suffered from a mental impairment prior to the relevant period should be considered in determining whether the impairment was severe.

9

### B. Relevant Work Experience

The ALJ identified Mr. Kill Small past relevant work as an auto mechanic, a construction laborer, concrete, a construction worker, and a dishwasher. (AR 20).

### C. Relevant Medical Evidence

Dr. Greg Swenson, Ph.D., conducted an evaluation in connection with Mr. Kills Small's 2008 social security disability application. (AR 815-824). Dr. Swenson administered the Wechsler Adult Intelligent Scale-III. Dr. Swenson noted that Mr. Kills Small focused his attention on task, maintained his concentration while solving problems, and made a sincere effort to solve problems and answer questions. (AR 817). Mr. Kills Small's full scale IQ was determined to be a 64. His verbal comprehension index was in the first percentile; his perceptional organizational index was in the second percentile; his working memory was in the fifth percentile; and his processing speed was in the fourth percentile. Id. Dr. Swenson noted that twelve out of the thirteen subtest scores were below average and the WAIS-III scores "indicate significant impairment in general intellectual ability, as well as marked impairment in comprehension and reasoning ability, as well as verbal skills. (AR 818-819).

Dr. Swenson also administrated the Wechsler Memory Scale-III, which according to Dr. Swenson, "were surprisingly strong, given Cameron's general intellectual ability." Ultimately, his GMI score was in the average range. Dr. Swenson also noted, "Cameron requires assistance managing his financial affairs." (AR 820).

Dr. Swenson diagnosed Mr. Kills Small with a "learning disorder, not otherwise specified, including impairment in verbal comprehension and reasoning ability," and "mild mental retardation," amongst other things.  Id.

Although the ALJ noted Dr. Swenson's finding and diagnoses in his decision, he gave Dr. Swenson's opinion little weight because it is "a one-time snapshot of the claimant's mental functioning and abilities, and does not address his mental conditions during the period at issue, and predates the alleged onset date by over seven years."  (AR 16).  He further cited Mr. Kills Small's prior work as an auto mechanic, a highly skilled position, and a construction worker, a semi-skilled position, as evidence that Mr. Kills Small possessed greater cognitive abilities that the 2008 testing would normally suggest.

The court finds that the ALJ erred by affording Dr. Swenson's opinion little weight.  First, the record does not support a finding that Mr. Kills Small's "worked" as a highly skilled auto mechanic in any meaningful way that would demonstrate higher functioning cognitive abilities than those diagnosed by Dr. Swenson.  The record demonstrates that in his disability report, Mr. Kills Small worked as a self-employed auto mechanic at a rate a pay of $1.00 per hour.  The relevant dates worked which was listed in the application was, "na."  (AR 301).  Mr. Kills Small testimony describes occasionally working on automobiles and would charge minimal amounts for his services if the owner could afford to pay him.  (AR 68-71).  The court finds the ALJ erred in finding that Mr. Kills Small performed auto mechanic work as substantial gainful activity.  The

record of Mr. Kills Small's occasional work on cars cannot be considered being employed as an auto mechanic- a highly skilled position, and is certainly not grounds for discounting medical evidence grounded in widely accepted testing protocols.

Similarly, the record does not support the conclusion that Mr. Kills Small worked as a semi-skilled construction worker. Mr. Kills Small described his construction job duties as "[h]auling & tying re-bar, framing floors, concrete work, shovellig [sic], haulig [sic] materials, setting foundations, grind rebar." (AR 351). He used tools, but not machines or equipment. Id. He did not use any technical knowledge or skills. Id. He did not do any writing or complete reports. Id. He did not supervise people in this job. Id. The record does not support the ALJ's conclusion that Mr. Kills Small worked as a semi-skilled construction worker. Likewise, it was error for the ALJ to discount Dr. Swenson's medical opinion on this basis.

Curiously, the ALJ also relied on the fact that the "record shows all his mental status examination records after the alleged onset date reported normal findings, and *he did not receive any mental health treatment during the period at issue.*" (AR 16)(emphasis added). The Commissioner correctly concedes the second portion of the ALJ's reasoning is flawed given the lack of treatment for intellectual impairments. (Doc. 23 at p. 10). However, the Commissioner's support of the ALJ because Mr. Kills Small's medical providers did not make findings regarding his intellectual disability while treating him for other ailments misses the mark. Medical professionals noting a "normal affect" while

treating Mr. Kills Small for problems with his leg, heart or stomach, in no way detracts, undermines, or overrules Dr. Swenson's diagnosis.

To characterize Dr. Swenson's opinion as a one-time snapshot of Plaintiff's functioning, ignores Mr. Kills Small difficulties in school, his sporadic employment in unskilled jobs, and his reported functioning difficulties.[1] The ALJ's decision that Mr. Kills Small's cognitive impairment was non-severe is an error of law because it is not based on substantial evidence and is not supported by good reason. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).

As discussed *supra,* this court finds the error at step two is not harmless. "Failure to identify all of a claimant's severe impairments impacts not only the ALJ's credibility findings, consideration of activities of daily living, but most importantly, a claimant's residual functional capacity . . . ." Thurston

---

[1] Mr. Kills Small testified that his wife takes care of all the bills, completes the forms for Social Security and other paperwork on his behalf. His wife reads the documents to him and then makes him understand it. (AR 52-56). In his function report he answered the question, "How well do you follow written instructions?" with "Not very good." (AR 316). In his 2008 disability report he answered the question by stating "not to [sic] good because I can't understand." At the end of the 2008 disability function report it reads, "My name is Lois Kills Small, his wife. I filled out his paperwork because he don't [sic] understand this form." (AR 442). Mr. and Mrs. Kills Small's testimony were consistent on these points. (AR 52-58). At the hearing, the ALJ asked Mr. Kills Small if he was able to write or not. He testified, "I don't really write too much because I don't – I don't really write, I can't write that good." (AR 56). When the ALJ asked him if he ever had a driver's license, Mr. Kills Small testified, "No, sir. I can get one, but I never tried because of my education." Upon further inquiry as to what about his education would stop him from getting a driver's license, Mr. Kills Small testified, "I don't really hardly read or I don't know how to write that good." (AR 73).

v. Colvin, CIV. 15-5024, 2016 WL 5400359, at *5 (D.S.D. Sept. 27, 2016). If "[t]he ALJ erred as a matter of law at step two of the sequential evaluation process [,] [t]he remainder of the ALJ's decision is similarly defective." Lays Hard v. Colvin, CIV. 14-5063, 2016 WL 951508, at *8 (D.S.D. Mar. 9, 2016). If a claimant's severe impairments must be revisited, "the subsequent steps in the evaluation process must be reanalyzed." Id.

## ORDER

Based on the above analysis, it is hereby

ORDERED that plaintiff's request for relief that the judgment be entered reversing the decision of the Commissioner (Docket 1) is granted.

IT IS FURTHER ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), the case is remanded to the Commission for rehearing consistent with this decision.

DATED this 30th day of November, 2020.

BY THE COURT:

DANETA WOLLMANN
UNITED STATES MAGISTRATE JUDGE